UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

                                     Case No. 99-cr-82-pp

   v.

THEODORE GLORE,

        Defendant.

## ORDER DENYING MOTION TO CORRECT JUDGMENT (DKT. NO. 112)

On February 25, 2019, the court issued an order granting the defendant's motion for resentencing under the First Step Act of 2018, and resentencing him to time served. Dkt. No. 110. The next day, the defendant filed this motion, asking the court to "correct" that sentence. Dkt. No. 112. The court did not err in imposing the time-served sentence, and will deny the motion.

I.    The 1994 Case

On July 6, 1994, the grand jury indicted the defendant and Jermaine O'Conner on several counts of possessing with intent to distribute and distributing cocaine. United States v. Jermaine O'Conner and Theodore Glore, Case No. 94-cr-102 (E.D. Wis.), Dkt. No. 13. The defendant pled guilty before Judge Terence T. Evans. Id. at Dkt. No. 50. On December 12, 1994, Judge Evans sentenced the defendant to serve a total of 144 months in custody, followed by five years of supervised release. Id. at Dkt. No. 57. Judge J.P.

1

Stadtmueller later revised that sentence (presumably because Judge Evans had ascended to the Seventh Circuit), but the term of supervised release—five years—remained the same. Id. at Dkt. Nos. 80, 85. Judge Evans had imposed conditions of supervised release, including a condition that the defendant could not illegally possess any controlled substance, ordering that if he did, he would be revoked and sent to prison. Id.

II.   The 1999 Case

On May 11, 1999, the grand jury indicted the defendant for possession with intent to distribute in excess of five grams of cocaine base, or "crack"—that indictment is the basis for this current case. Dkt. No. 4. As the defendant states in his motion, "[a]t the time, that five-gram threshold was enough to subject a person to the penalties of 21 U.S.C. § 841(b)(1)(B), and its minimum/maximum prison range of five-to-40 years." Dkt. No. 107 at 1. The defendant was serving his five-year term of supervised release in Case No. 94-cr-102 at the time he committed the offense in this case.

A.   *The Contempt Finding*

On July 7, 1999, during the final pretrial conference in this case, the defendant "intentionally threw or knocked the microphone from the defense table causing it to break; he cursed, shouted, and had to be restrained by deputy U.S. Marshals, thereby delaying and disrupting the proceeding." Dkt. No. 31. On October 5, 1999, Judge Clevert found the defendant in contempt, based on this conduct. Id.

B.    *The Conviction and Sentencing*

After a bench trial on the substantive charge of possession with intent to distribute crack, the defendant was convicted on July 21, 1999. Dkt. No. 29. Judge Clevert conducted the sentencing hearing on October 5, 1999. Dkt. No. 32. As noted, a defendant convicted of possessing in excess of five grams of crack faced a mandatory minimum sentence of five years (sixty months), and a maximum of forty years. The United States Sentencing Guidelines were mandatory at that time (the Supreme Court did not issue its decision in United States v. Booker until 2005). The defendant qualified as a career offender under §4B1.1. Because the applicable statutory maximum was forty years and he qualified as a career offender, the defendant's base offense level under §4B1.1(b)(2) was 34 and his criminal history category was VI, resulting in a guideline range of 262 to 327 months. Dkt. No. 107 at 1-2. Judge Clevert imposed a sentence of 276 months—fourteen months over the low end of the range. Dkt. Nos. 32, 33.

During that same hearing, the defendant admitted that his conviction in this case proved that he had violated the conditions of his supervised release in Case No. 94-cr-102; Judge Clevert sentenced him to serve eighteen months in custody for that violation, to run *consecutively* to the sentence imposed in this case. Case No. 94-cr-102, Dkt. No. 93.

Finally, Judge Clevert found that the defendant had committed contempt of court during his outburst at the final pretrial conference, and sentenced him to serve ninety days in custody for the contempt. Dkt. No. 31. Judge Clevert

3

ordered that that ninety-day sentence run *concurrently* with the eighteen-month sentence he'd imposed for the defendant's supervised release violations in Case No. 94-cr-102 (which he'd imposed to run *consecutively* to the 276-month sentence imposed in this case). Id.

III.    The First Step Act

In 2010, Congress passed the Fair Sentencing Act, which reduced the disparity between sentences for crack and powder offenses; it reduced the powder-to-crack ratio from 100 to 1 to 18 to 1. Dorsey v. United States, 567 U.S. 260, 263 (2012). The statute took effect on August 3, 2010. Id. Specifically, the statute changed the triggering amount for the five-year mandatory minimum and forty-year maximum in 21 U.S.C. §841(b)(1)(B)(iii) from five grams or more of crack to twenty-eight grams or more. Fair Sentencing Act of 2010, PL 111-220, Aug. 3, 2010, 124 Stat. 2372 at §2(a)(2). Under the Fair Sentencing Act, crack offenses involving less than twenty-eight grams carried no mandatory minimum penalty and a maximum of twenty years. 21 U.S.C. §841(b)(1)(C). The Supreme Court analyzed the language of the Fair Sentencing Act and determined that "Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders." Dorsey, 567 U.S. at 281. Under that ruling, people like the defendant in this case, who had both offended and been sentenced before August 3, 2010, did not receive the benefit of the reduced statutory minimums and maximums created by the Fair Sentencing Act.

If the Supreme Court had held that the Fair Sentencing Act applied retroactively, that holding would have impacted the defendant's sentencing guidelines calculation. The career offender guideline in §4B1.1(b) is calculated using the statutory maximum penalty applicable to the offense of conviction. A defendant whose offense of conviction carries a maximum of twenty-five years or more is subject to an offense level of 34, regardless of what his offense level would have been were he not a career offender. Level 34 in criminal history category VI yields a sentencing range of 262 to 327 months. An offender whose offense of conviction carries a maximum of twenty years is subject to an offense level of 32. Level 32 in criminal history category VI yields a sentencing range of 210 to 262 months. The lower statutory maximum would have resulted in a difference of fifty-two months on the low end of the defendant's applicable guideline range and sixty-five months on the high end.

In December 2018, Congress passed the First Step Act. The First Step Act made the statutory sentencing ranges for crack offenses established by the Fair Sentencing Act of 2010 retroactive to defendants who committed their offenses and were sentenced before August 3, 2010. Dkt. No. 107 at 3-4. Section 404 of the First Step Act made the Fair Sentencing Act reduction retroactive. Id. at 4-5. It applied to any defendant who, prior to August 3, 2010, was convicted of an offense for which the Fair Sentencing Act would have reduced the statutory penalties. Id. at 5. The First Step Act does not mandate sentence reductions for defendants who meet these qualifications; it leaves to the court's discretion whether to reduce their sentences. Id. Nor does the First

Step Act reduce the statutory penalties for such defendants; it does not retroactively subject such defendants to the lower statutory minimums and maximums created by the Fair Sentencing Act. It allows courts only to resentence eligible defendants *as if* the reduced minimums and maximums had been in effect when the defendants committed their offenses and were sentenced.

IV.    The Defendant's Motion to Reduce His Sentence

In his First Step motion (filed in case number 99-cr-82), the defendant argued that he was eligible for a First Step reduction because the offense of conviction was committed before August 3, 2010 (and he was sentenced before that date), and because if Judge Clevert had sentenced him after the Fair Sentencing Act went into effect, the defendant would have faced a lower sentence. Id. at 6-7. As the court has noted, had the defendant been sentenced under the Fair Sentencing Act, his guideline range would have been 210 to 262 months—a low end of sixty-six months below the sentence Judge Clevert imposed, and a high end of fourteen months below the sentence he imposed. The motion asked this court to reduce the defendant's sentence to "224 months[1] or time served," followed by three years of supervised release. Id. at 12.

---

[1] The defendant asked for a new sentence of 224 months because Judge Clevert had imposed a sentence fourteen months above the 262-month low end of the then-applicable guideline range; 224 months is fourteen months above the 210-month low end of the guideline range that would have applied had the Fair Sentencing Act been in effect when he was sentenced. Dkt. No. 107 at n.4.

Three days after receiving the defendant's motion, the court ordered the government to respond. Dkt. No. 108. Ten days later, the government complied with that order, agreeing that the defendant was eligible for a reduction under the First Step Act and joining the defendant's recommendation that the court resentence the defendant to time served. Dkt. No. 109. Given that, the court granted the defendant's motion, vacated the October 5, 1999 sentence that Judge Clevert had imposed in *this* case, and imposed a new sentence of time served. Dkt. Nos. 110 at 2, 111.

V.     The Defendant's Motion to "Correct" the Amended Sentence

A.     *The Defendant's Motion*

The defendant now asks the court to "correct" the time-served sentence under Fed. R. Crim. P. 35(a) and 36, by reducing it to a determinate sentence of 219 months. Dkt. No. 112 at 1. He says that if the court does not sentence him to a "specific term of months," the February 25, 2019 re-sentencing order "will not have its intended effect and [the defendant's] release from the Bureau of Prisons will not occur for approximately 14 months." Id. The reason that the defendant would not be released immediately with a time-served sentence in this case? Because Judge Clevert sentenced the defendant to serve a consecutive revocation sentence of eighteen months for violating the conditions of his supervised release in Case No. 94-cr-102 (and sentenced him to serve ninety days for the contempt in this case, to run concurrently to the revocation sentence). Id. at 2. The defendant reports that, in complying with the court's February 25, 2019 re-sentencing order, the Bureau of Prisons concluded that

7

the sentence in *this* case ended on February 25, 2019, and that his consecutive supervised release revocation sentence in Case No. 94-cr-102 started that same day. Id. at 2. The defendant asserts that this means that "the Court's time served judgment has not had the intended effect of releasing him. Rather, it had the effect of reducing [the defendant's] sentence by only seven months." Id. Defense counsel asserts that he erred in failing to ask for a sentence of 219 months—the time he already has served, minus eighteen months (the equivalent of the sentence Judge Clevert imposed in 94-cr-102). Id. at 1-2. He says that if the court amends the judgment to sentence the defendant to 219 months, "the intent of the defense's motion (and of the First Step Act) is met," and it will "correct defense counsel's clear error." Id. at 2.

B.     *The Government's Response*

The government objects. Dkt. No. 113. The government says that it erred in agreeing that the defendant was eligible for a reduction under the First Step Act. Id. at 1-3. It asserts that the defendant's offense "involved 46.5 grams of crack cocaine," and that even under the Fair Sentencing Act, that amount would have carried a mandatory minimum penalty of five years and a maximum of forty years. Id. at 2. The government asserts that even if the Fair Sentencing Act had been in effect at the time of the defendant's sentencing, his offense category under the career offender guideline would have been the same, because he would have faced the same minimum and maximum penalties under the Fair Sentencing Act that he faced in 1999. Id.

The government says that despite the above, it agreed to the defendant's motion to reduce his sentence under the First Step Act because it found "a district court decision that applied a reduction under the First Step Act even though the quantity of crack cocaine involved in the offense met the new thresholds triggering the mandatory minimums under the Fair Sentence [sic] Act." Id. at 2.

The government then argued that, at the time the defendant was convicted and sentenced and at the time the Fair Sentencing Act went into effect, it would have been legal for the sentencing judge to decide the relevant statutory minimum and maximum penalties by making a finding of fact regarding the amount of drugs involved in the crime of conviction. Id. at 2-3. The government argues that not until its 2013 decision in Alleyne v. United States, 570 U.S. 99, 116 (2013), did the Supreme Court hold that "facts that increase mandatory minimum sentences must be submitted to the jury." Id. at 3. The government says, "The First Step Act only directs courts to examine a sentence as if Sections 2 and 3 of the Fair Sentencing Act were in effect at the time, not to change the manner of determining quantity." Id. at 4. It concludes, "Based on the foregoing, [the defendant] was never entitled to a reduction." Id.

Despite arguing that the defendant never was entitled to the reduction to which the government agreed, the government does not specifically ask the court to retract the sentence reduction. Rather, it objects to the court reducing the eighteen-month sentence Judge Clevert imposed on the supervised release

revocation in Case No. 94-cr-102 (and the concurrent ninety-day contempt sentence he imposed in this case). Id. at 4.

C. *The Defendant's Reply*

The defendant replies that "for this Court's new sentence to be legally permissible, let alone carry out the intentions of the First Step Act, the Court has to resentence [the defendant] to a specific term that is 240 months or less." Dkt. No. 114 at 1-2. The defendant argues that as of the date he filed the reply, he had been in federal custody since May 6, 1999—237 months and twenty-three days. Id. at 3. Although this is a little over two months *less* than the statutory minimum that the defendant argues would have applied had he been sentenced under the Fair Sentencing Act, the defendant asserts that it "qualifies" as "far more than 240 months" because he has earned over three years of good conduct time, id. at 3, n.1, and that as a result, he has "overserved" his sentence based on the "new statutory maximum," id. at 3. He asserts that "'[t]ime served' imposes a 272-month federal sentence." Id. He cites two Sixth Circuit cases for the proposition that a court cannot impose a time-served sentence if a defendant has over-served his time. Id. at 3-4 (citing United States v. Nichols, 897 F.3d 729, 733-34 (6th Cir. 2018); United States v. Mitchell, 905 F.3d 991, 994 (6th Cir. 2018)).

The defendant next argues that, even though the First Step Act left the question of whether to reduce a defendant's sentence entirely to this court's discretion, Judge Clevert imposed a "remarkably punitive sentence" for a one-time, unsuccessful drug transaction in which the defendant was not armed

and did not commit any acts of violence. Id. at 4. He argues that this sentence was the result, in part, of "the sordid history of crack laws." Id. He notes that Senator Grassley, a co-sponsor of the First Step Act, noted that it was designed to eliminate the disparity in powder cocaine and crack sentences, which disproportionately impacted communities of color. Id. at 5. The defendant maintains that if his 1999 offense had involved powder cocaine, and not crack, he would have been out of prison last year. Id.

The defendant states that he is "not asking for a sentence that somehow eliminates his revocation or contempt sentences. Rather, he is asking for a fair and legally permissible sentence under the current laws. That's what the First Step Act says he should get if this Court opts to resentence him, as it has already done." Id. Finally, the defendant emphasizes that he has done well while in prison, completing programming and ending up in a low-security facility. Id. at 5-6. The defendant devotes the rest of his reply to disputing the government's argument that he wasn't eligible for reduction under the First Step Act. Id. at 6-16.

VI.     The Court's Analysis

A.      *The Government's Argument*

The court will not retract its decision to reduce the defendant's sentence under the First Step Act. Even if the court were inclined to reconsider its conclusion that the defendant qualifies for a First Step Act reduction, the government has not given it reason to do so.

The government indicates that initially, it planned to oppose the defendant's motion for a First Step reduction. It says that it agreed to the reduction because it found a "district court decision that applied a reduction under the First Step Act even though the quantity of crack cocaine involved in the offense met the new thresholds triggering the mandatory minimums under the Fair Sentenc[ing] Act." Dkt. No. 113 at 2. That district court case was United States v. Fleurival, 2019 U.S. Dist. LEXIS 20057, *1-2 (W.D. Va., Feb. 6, 2019). In the parenthetical after the case cite, the government stated (implying that the Fleurival court had decided as much) that "[c]onspiracy involving 499 grams of crack cocaine not an impediment to reduction under the First Step Act despite level of crack cocaine meeting minimum weight requirements for most severe penalties under Fair Sentencing Act." Id.

The defendant in Fleurival was charged in 2006 with conspiracy to possess in excess of fifty grams of crack—an amount which at that time exposed him to a mandatory minimum sentence of ten years and a maximum of life. Because Fleurival had a prior felony drug conviction and the government had filed an enhancement notice under 21 U.S.C. §851, his mandatory minimum penalty increased to twenty years. Fleurival was not a career offender; the court did not calculate his offense level under §4B1.1. Rather, it calculated his offense level based on the amount of crack attributed to the defendant—499.9 grams. That amount of crack yielded an offense level of 34; minus three levels for acceptance of responsibility, the court found that the defendant had an adjusted offense level of 31 in criminal history category VI

and was subject to a sentencing range of 188 to 235 months. But because the mandatory minimum penalty prescribed by the pre-Fair Sentencing Act version of 21 U.S.C. §841(b) was 240 months—higher than the applicable guideline range—the court sentenced him to serve 240 months.

Had the Fair Sentencing Act been in effect at the time of Fleurival's sentencing, the charge of conspiracy to possess in excess of fifty grams of crack still would have exposed him to a maximum penalty of life. But it would have carried a mandatory minimum penalty of only ten years. Due to amendments in the drug guidelines between the date of Fleurival's sentencing and the passage of the First Step Act, the court found that his guidelines at the time of resentencing were 130 to 162 months. Fleurival had served 137 months as of the date of resentencing; the court sentenced him to time served.

The government appears to think that the Fleurival court could have resentenced Fleurival as if he had been charged with possessing *499.9* grams of crack—the amount attributed to him in his presentence investigation report—rather than in excess of *fifty* grams of crack—the amount with which he was charged. It is true that under the Fair Sentencing Act, a charge of conspiracy to possess 499.9 grams of crack would have triggered the twenty-year mandatory minimum to which Fleurival originally was sentenced, but he was not *charged* with possessing 499.9 grams of crack. The court in Fleurival resentenced Fleurival on the charge for which he was convicted, as if the Fair Sentencing Act had applied to that charge as of the original sentencing date.

The indictment in this case alleges that on May 6, 1999, the defendant knowingly and intentionally possessed with the intent to distribute in excess of five grams of crack. Dkt. No. 4. If the Fair Sentencing Act had been in effect on October 5, 1999, the day Judge Clevert sentenced the defendant, the defendant still would have qualified as a career offender under §4B1.1(a). Judge Clevert still would have calculated his mandatory sentencing guideline range by going to §4B1.1(b). The only difference is that, rather than using the offense level applicable to a charge that carried a maximum statutory penalty of twenty-five years or more under §4B1.1(b)(2) (level 34) and a guideline range of 262 to 327 months, Judge Clevert would have used the offense level applicable to a charge that carried a statutory maximum of twenty to twenty-five years under §4B1.1(b)(3) (level 32) and a guideline range of 210 to 262 months.

The government uses its strange interpretation of the <u>Fleurival</u> decision to argue that even had the Fair Sentencing Act been in effect when Judge Clevert sentenced the defendant, Judge Clevert still would have (or could have) used offense level of 34, applicable to an offense that carried a maximum statutory penalty of twenty-five years or more, based on the amount of crack that the defendant was proven to have possessed as of the sentencing date, rather than the amount alleged in the indictment.

In support of this position, the government argues that the state of the law between 1999 and 2013 would have allowed Judge Clevert to calculate the defendant's sentence using the statutory penalties applicable to the amount of drugs Judge Clevert found the defendant possessed, rather than the amount

14

alleged in the indictment. The government cites the Supreme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Harris v. United States, 536 U.S. 545 (2002), and Dillon v. United States, 543 U.S. 220 (2005), and asserts that it was not until the Supreme Court's 2013 decision in Alleyne, 570 U.S. 99, that the Supreme Court held that "facts that increase mandatory minimum sentences must be submitted to the jury."

The court is befuddled by this argument. It finds it hard to imagine that Judge Clevert would have decided that the "offense statutory maximum," in the words of §4B1.1(b), was the maximum applicable to the amount of crack proved up at sentencing, rather than the amount alleged in the indictment. The court need not analyze whether it would have been *legal* for Judge Clevert to do that, had he inexplicably elected to do so. For the government to argue that the defendant does not meet the eligibility requirements of the First Step Act because of the remote possibility that Judge Clevert could have done something that this court does not recall ever having seen him do, and that this court has never done, and that it is not aware of other judges doing, is mystifying. The government has the prerogative to argue that even if a defendant is eligible for a First Step reduction, the court should decline to exercise the broad discretion given it by the First Step Act, and refuse to reduce a defendant's sentence. But its argument that a defendant is not *eligible* because the sentencing court might have elected to calculate his statutory penalties in a way that now is unlawful, and back then would have been illogical, is unpersuasive.

B.    *The Defendant's Arguments*

The defendant brought his motion to "correct" the amended sentence under Fed. R. Crim. P. 35(a) and 36. Rule 35(a) allows a court to "correct a sentence that resulted from arithmetical, technical, or other clear error" within fourteen days after it imposes that sentence. Rule 36 allows a court to "correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission," at any time.

The court need not address any of the defendant's specific arguments in order to deny the motion, because there is no "error" for the court to correct. Section 404(b) of the First Step Act says that a court "may" impose a reduced sentence. The statute leaves it up to the court to decide whether to reduce an eligible defendant's sentence, and a court that decided *not* to impose a reduced sentence would commit no error. If the law does not require this court to reduce the defendant's sentence at all, it is difficult to see how *any* order reducing the defendant's sentence could constitute an error.

Turning to the defendant's specific arguments, the defendant appears to believe that the court meant to impose a sentence that would result in the defendant's immediate release. He asserts that a time-served sentence, as it turns out, will not result in his immediate release, and says that if the court does not reduce the sentence to 219 months, the February 25, 2019 order "will not have its intended effect." Dkt. No. 112 at 1. He makes this assertion in several places, contending that the court intended the time-served sentence to have the effect of releasing him, and implying that its choice of a time-served

16

disposition erroneously failed to effectuate that intent. <u>Id.</u> at 2. He also asserts that *he* intended to secure his immediate release by filing the motion, and that the First Step Act was intended to secure his immediate release. <u>Id.</u>

The court has no doubt that the defendant intended to secure his immediate release by filing his First Step motion. But the fact that the new sentence did not effectuate *the defendant's* intent does not constitute error. The February 25, 2019 order did not say that the court intended for the defendant to be released immediately, nor did it order him to be released immediately. It said only that the court sentenced the defendant to a term of time served, and that once he is released from prison, he must serve three years of supervised release. Dkt. No. 110 at 1-2. The court worded the order that way on purpose, because it knew that Judge Clevert had imposed a consecutive revocation sentence in Case No. 94-cr-102. As for the intent of the First Step Act, if Congress intended for courts to order that any eligible defendant be released immediately, regardless of the circumstances, it could have written the statute that way. It did not. The fact that the time-served sentence has not resulted in the defendant's immediate release is not "error" under Rules 35(a) and 36.

The defendant filed his motion for a First Step sentence reduction in *this* case—Case No. 99-cr-82—not in the case that resulted in the eighteen-month revocation sentence (94-cr-102). The only sentence the defendant asked the court to reduce was his 276-month sentence for crack possession, and that is the only sentence that the First Step Act authorized the court to reduce. The

court issued an order reducing only that sentence. This court does not have the authority to reduce the eighteen-month sentence Judge Clevert imposed in Case No. 94-cr-102. Rule 35(a) allows a court to correct a sentence for clear error within fourteen days of its imposition; that date has long passed for the eighteen-month sentence imposed on October 5, 1999. The only other basis the court would have for reducing that sentence would be a motion from the government for substantial assistance under Rule 35(b), and the government has not made such a motion.

The defendant argues that he has been in custody since May 6, 1999; that means that as of the date the court issued the reduced sentence, he had served 237 months and nineteen days. The defendant asserts that it was a legal error for the court to impose a sentence of that length, because the law requires the court to impose a determinate sentence of 240 months or less. The defendant asserts that the government admitted when it joined his motion for resentencing that "[a]pplying the penalties under the Fair Sentencing Act in this case results in a reduction of the maximum penalty on Count One to 20 years imprisonment." Dkt. No. 114 at 2 (quoting Dkt. No. 102 at 2). Based on this admission, the defendant argues that the court "cannot impose a sentence greater than 20 years, or 240 months." Id.

From a legal standpoint, this argument attributes to the First Step Act something that it did not do. The First Step Act did *not* retroactively apply the statutory penalties of the Fair Sentencing Act to offenses that occurred before its implementation. It did not create, in the defendant's words, a "new statutory

maximum." Id. at 3. It gave courts the discretion to resentence defendants who had committed such offenses *as if* the Fair Sentencing Act penalties had been in effect when they were sentenced. The maximum penalty that applied to the offense with which the defendant was charged was forty years. The First Step Act did not change that, and forty years is the statutory cap that governs this court's resentencing of the defendant.

From a mathematical standpoint, even if the First Step Act had retroactively imposed a 240-month statutory maximum for the offense of which the defendant was convicted, the "time served" sentence the court has imposed does not exceed 240 months. As the defendant himself concedes, at the time the court imposed the time-served sentence, he had served just under 238 months. Two hundred thirty-eight months is *less than* 240 months.

The defendant asserts that because he has earned good conduct time, the court's sentence of time served—237 months and nineteen days—"qualifies as more than 240 months." Id. at 3. He says, "[s]pecifically, 237 months and 23 days with the full, current amount of good time—47 days a year—equates to at least a 272-month sentence." Id. The court has a hard time grasping this concept. The court did not impose a sentence of 272 months, then try to calculate and subtract possible good conduct credit to get to a sentence of 273 months and nineteen days. It imposed a sentence of time served, and at the time it did so, the *time* that the defendant had *served* was 237 months and nineteen days. The Bureau of Prisons should apply any good conduct credit to that sentence.

The defendant sites United States v. Laguerre, Case No. 02-cr-20098, 2019 WL 861417, *3 (W.D. Va. Feb. 22, 2019), in support of his argument that a 238-month-sentence is really a 272-month-sentence. In Laguerre, the district court granted the defendant's motion for a First Step reduction, and recalculated his sentence at 196 months. Id. It noted that according "to the Addendum prepared by the United States Probation Office, it appears that Laguerre has already served approximately 191 months." Id. The court then made the curious statement that, "[g]iven that the defendant is seeking immediate release (and the fact that the Bureau of Prisons currently projects his release date to be July 2020, presumably because of his good time credits), he may have served more than 196 months already." Id.

This court suspects that the Languerre court was merely taking into account the possibility that the probation department may have miscalculated the amount of time that Languerre actually had served, and was trying to avoid imposing a sentencing that would create a "bank account" of over-served time which he could later argue ought to be applied against any supervised release revocation sentence. This court suspects that the Languerre court did *not* mean to wade into the world of quantum physics and relativity by finding that 191 thirty-day increments adds up to 5,880 days, rather than 5,730.

Perhaps the defendant intended to argue that the court erred by failing to calculate the sentence the defendant would have received had the statutory penalties under the Fair Sentencing Act been in effect on the date he was sentenced, then calculate how much good conduct credit he would have earned

on that sentence, subtracting that good conduct credit from the sentence and imposing *that* amount of time as the amended sentence. If so, that "failure" did not constitute error under Rules 35(a) and 36. Courts do not calculate good conduct credit—the Bureau of Prisons does. The law allows a prisoner "who is serving a term of imprisonment of more than 1 year" to "receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of that term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. §3624(b)(1). "Credit for the last year or portion of a year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence." Id. Over the past twenty years, the Bureau of Prisons should have been calculating the defendant's good conduct time based on that statute, using the formula it uses to calculate good conduct credit for every other inmate in the BOP. It should credit that time against the new sentence.

Perhaps the defendant is arguing that it was error for the court to impose a sentence of time served, rather than a determinate sentence of 219 months, because since the court imposed the reduced sentenced, he has become concerned that the BOP has miscalculated his good conduct credit. He attached to the motion to correct the sentence a screen shot of his page on the BOP's inmate locator web site. Dkt. No. 112-1. That page indicates that the BOP has calculated the defendant's release date as June 15, 2020. Id. See also

https://www.bop/gov/inmateloc/. In a footnote in his reply brief in support of the motion to correct the sentence, the defendant asserts that his "previous release date was January 18, 2021 . . . ." Dkt. No. 114 at 3 n.1. If that is true—if prior to resentencing the BOP had calculated the release date as January 18, 2021, and after the thirty-nine-month sentence reduction the BOP advanced that release date by only seven months—perhaps the *BOP* has made a calculation error.[2] If so, that does not constitute an error with the amended sentence.

The defendant next argues that the court erred in imposing a sentence of time served, because case law forbids a court from imposing a time-served sentence when a defendant has "overserved." Dkt. No. 114 at 3. He cites the Sixth Circuit's decision in <u>Nichols</u>, 897 F.3d 729. That decision does not stand for the proposition that a court cannot impose a sentence of time served if a defendant arguably has over-served the time the court would have given him had circumstances been different; it holds that a court cannot impose a sentence of time served if that sentence exceeds the *applicable statutory maximum*. <u>Id.</u> at 733-74. In <u>Nichols</u>, the defendant had been sentenced as an armed career criminal; the Supreme Court's decision in <u>Johnson v. United States</u>, ___ U.S. ___, 135 S.Ct. 2551 (2015), stripped him of that status and exposed him to resentencing for an offense that carried a statutory maximum penalty of ten years. <u>Id.</u> By the time the district court resentenced him, the

---

[2] The defendant, or counsel, can discuss how the BOP came up with the new release date with the defendant's case manager. Perhaps the probation department might also be of assistance.

defendant had served twelve years—two years over the statutory maximum. Id. at 733. The Sixth Circuit found that a time-served sentence of twelve years was unlawful, because it exceeded the statutory maximum of ten years. Id. at 735.

Nichols is not binding on this court, but even if it were, it would not render the court's time-served disposition in this case unlawful. As the court already has found, the statutory maximum that was in effect when the defendant was convicted was 480 months—this court's time-served sentence is well below that maximum.

The defendant argues that it is error for the court to impose a sentence that does not effectuate his immediate release because the 276-month sentence he received from Judge Clevert was "remarkably punitive," and was based on an illogical 100-to-1 powder-to-crack sentencing ratio that disparately impacted minority defendants. Dkt. No. 114 at 4-5. He argues that had he been charged with possessing powder cocaine, he would have faced a statutory maximum of only twenty years and "a mandatory guideline range of 210 to 240 months." Id. at 5. He indicates that all he is asking for is "a sentence not tainted by the unfounded 100-to-1 disparity." Id.

The time-served sentence the court imposed *is* a sentence "not tainted by the unfounded 100-to-1 disparity." The court has laid out what the defendant's guideline range would have been had he been subject to a twenty-year maximum—level 32 under §4B1.1(b)(3) in criminal history category VI would have resulted in a sentencing range of 210 to 262 months. The 237-month time-served sentence is within that range.

The defendant asserts that he was a "low-level, non-violent, and unarmed drug defendant." Id. at 4. This argument ignores the most salient factors in his original sentence—the fact that he qualified as a career offender, and the fact that the sentencing guidelines were mandatory at the time Judge Clevert sentenced him. Even if the statutory penalties under the Fair Sentencing Act had been in effect in 1999, the defendant still would have qualified as a career offender. Even if the statutory penalties under the Fair Sentencing Act had been in effect in 1999, Judge Clevert still would have been required to impose a sentence within the 210-to-262-month guideline range.

The heart of this argument is that it would be "error" for the defendant to receive an amended sentence that does not result in his immediate release, because he has been punished too severely. The court agrees that the defendant has been in prison for a very long time, partly as a result of the powder-to-crack sentencing disparity the Fair Sentencing Act and the First Step Act sought to address. But the defendant also has been in prison a long time because he chose to possess 46.5 grams of cocaine base—arguably somewhere between 800 and 950 single doses—while he was on supervised release for a prior federal drug conviction. He has been in prison a long time because he had two predicate felonies, qualifying him as a career offender. He has been in prison a long time because he changed his mind about pleading guilty and went to trial, which lost him the three points he could have earned for acceptance of responsibility under §3E1.1. He has been in prison a long time because of his behavior at the final pretrial conference. As hard as it

24

might be to imagine, the defendant's situation could have been worse. In the plea agreement the defendant signed, the government agreed not to file an information under 21 U.S.C. §851(a). Dkt. No. 19 at 4. Although the defendant did not enter that plea, the government still did not file the §851(a) notice. Had it done so, the defendant would have faced a twenty-year *mandatory minimum*—the *bottom* of the guideline range would have been 240 months. The court has used its discretion to reduce the defendant's sentence by approximately thirty-nine months, or three years and three months; the fact that the reduction still results in a very long sentence does not constitute "error" under Rules 35(a) and 36.

Finally, the defendant argues that he has done well while in prison. He attached to his motion for a reduced sentence a number of certificates from programs he has completed while in custody—an introductory court in barber's training, a victims awareness class, a sheet metal course, a culinary arts course, his HSED, a drug abuse program and a twelve-step program. He also earned his GED. Dkt. No. 107-2. He has paid his special assessment and the fine Judge Clevert imposed. Dkt. No. 107-3. The defendant says he has learned from his time in custody, has changed and grown, and has made plans to live a healthy, law-abiding life when he is released. Dkt. No. 107-4.

It certainly appears that the defendant has made good use of his time and the court congratulates him on his achievements. The court very much hopes that the defendant keeps up the good work when he is released, and does all the good things he indicates he plans to do—finding a good, solid job,

spending time with his children, maybe getting married. These positive things are part of the reason that the court exercised its discretion to grant the sentence reduction.

VII.     Conclusion

The First Step Act did not require the court to reduce the defendant's sentence. The court exercised its discretion to do so. The First Step Act did not require the court to impose a particular sentence. The court imposed a sentence of time served because that was one of the options the defendant recommended, and it was the option the government joined in its original filing.

The court did not commit error in imposing a time-served sentence. It will not further reduce the sentence by eighteen months to, in effect, remove the requirement that the defendant serve the revocation sentence.

The court **DENIES** the defendant's motion to correct judgment. Dkt. No. 112.

Dated in Milwaukee, Wisconsin this 6th day of March, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**