UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                             Case No. 99-cr-82-pp

THEODORE GLORE,

    Defendant.

---

**ORDER GRANTING MOTION TO RECONSIDER (DKT. NO. 123) AND ORDERING PROBATION DEPARTMENT TO PREPARE A SUPPLEMENTAL PRESENTENCE REPORT**

---

    A lot of water has passed under the bridge in this case over the past two and a half months. On February 10, 2019, the defendant filed a motion asking the court to reduce his sentence under the First Step Act of 2018. Dkt. No. 107. That motion asked that the court either reduce the defendant's sentence to 224 months or to time served, followed by three years of supervised release. Id. at 12. The government agreed that the court should reduce the defendant's custodial sentence to time served, and his supervised release term to three years. Dkt. No. 109. The court granted the defendant's motion and reduced his sentence to time served followed by three years of supervised release. Dkt. Nos. 110, 111.

    The day after the court entered the amended judgment, the defendant filed a motion asking the court to "correct" the reduced sentence, by replacing the "time served" custodial disposition with a determinate sentence of 219

1

months. Dkt. No. 112. The motion indicated that the court's order reducing the sentence to time served had not had the "intended effect" of effectuating the defendant's immediate release; the defendant asserted that the Bureau of Prisons had calculated the time served disposition in such a way that the defendant would be released only seven months before he would have been released under the original sentence. Id. at 2-3.

The government not only objected to this motion, but argued that the court should not grant a sentence reduction at all. Dkt. No. 113. The government asserted that it shouldn't have agreed to a sentence reduction, and that in any event, it had agreed to a reduction only to the extent that the defendant's sentence would have been different had the Fair Sentencing Act been in effect at the time he committed his crimes. Id. at 2-4. It argued that the First Step Act did not authorize the court to resentence the defendant on other aspects of his punishment, such as the eighteen-month sentence Judge Clevert had imposed when revoking the defendant's supervised release in Case No. 94-cr-102. Id. at 4.

The defendant's response implied that when the court reduced his sentence to time served, it imposed an illegal sentence. Dkt. No. 114. The defendant asserted, "In truth, for this Court's new sentence to be legally permissible, let alone carry out the intentions of the First Step act, the court has to resentence [the defendant] to a specific term that is 240 months or less." Id. at 1-2. Ignoring the fact that the First Step Act gave courts discretion about whether to grant a reduction at all, the defendant argued that the sentence of

2

time served was "*greater* than the new statutory maximum," id. at 3, that the time-served sentence was "not permissible" under the Act, id., that his original sentence was unfair, id. at 4-5, and that the First Step Act allowed the court to conduct what amounted to a plenary resentencing, id. at 10-16.

The court denied the defendant's motion to "correct" the amended sentence. Dkt. No. 115. While it rejected the government's suggestion that it should reconsider its grant of the original sentence reduction request, id. at 11-15, it declined to "correct" the amended judgment because it found that there was no "error" to correct, id. at 16. The court disagreed that it had "intended" for the defendant to be released immediately. Id. at 16-17. It disagreed that it had the ability to change the revocation sentence. Id. at 17-18. It disagreed that the time-served sentence was illegal. Id. at 18-19. It disagreed with all the defendant's arguments, in a lengthy (probably excessively lengthy) decision.

The defendant—acting on his own, not through counsel—filed a notice of appeal. Dkt. No. 116. A couple of weeks later, the defendant's lawyer asked the court to extend the deadline for filing a notice of appeal; he wanted to do some research and talk with the defendant about whether an appeal made sense. Dkt. No. 120. The court granted that request, dkt. no. 121, and the Seventh Circuit dismissed the *pro se* appeal, dkt. no. 122.

A day or so later, the defendant filed this motion to reconsider. Dkt. No. 123.[1] The motion specifically addressed the court's statement in its denial of

---

[1] Six days later, the defendant filed another notice of appeal, dkt. no. 124, depriving this court of jurisdiction to decide the motion to reconsider. The court issued an order declining to rule on the motion for that reason. Dkt. No. 129.

3

the motion to correct that the defendant had, at the time the court issued the amended judgment on February 25, 2019, served 237 months and nineteen days in custody, and that the court had "used its discretion to reduce the defendant's sentence by approximately thirty-nine months."[2] Id. at 1 (quoting Dkt. No. 116 at 19, 25). Those statements prompted defense counsel to contact the Bureau of Prisons and ask for documentation regarding how the BOP had treated the court's order imposing a new sentence of time served. Id. at 1-2. Defense counsel attached to the motion to reconsider a document titled "Public Information Inmate Data As of 04-03-2019." Dkt. No. 123-1. Counsel indicated that he received this document from Robert A. Martinez, the associate general counsel at the Bureau of Prisons. Dkt. No. 123 at 1. Counsel observed that the document reflected that the Bureau of Prisons did not show a thirty-nine-month reduction in the defendant's sentence. Id. at 2. The defendant asked the court to modify the amended judgment, and to impose a determinate sentence of 238 months. Id.

Since February 10, 2019, the defendant has asked the court to reduce his sentence to time served, 224 months, 219 months, less than 240 months and now, 238 months. The target has moved because (a) the defendant wants

---

The defendant then dismissed the appeal, dkt. no. 130, returning jurisdiction to this court.

[2] The court came to this conclusion because the defendant had argued in his motion to correct the sentence that he had been in custody since May 6, 1999. The court "did the math," and concluded that 237 months and nineteen days had elapsed between that date and February 25, 2019, the date that the court imposed the reduced sentence of time served.

4

to be released immediately (and has wanted that since long before the First Step Act went into effect), (b) this court made the mistake of indicating in its order denying the motion to correct that it intended to reduce the defendant's sentence by thirty-nine months and (c) this court neglected to request input from one source that could help clarify the confusion about the true impact of a First Step reduction for this defendant, given his particular circumstances. The court is granting the defendant's request that it reconsider the reduced sentence it imposed, but it will not announce a new sentence or enter an amended judgment until it clarifies some things, and obtains input from probation.

<u>The Original Sentence</u>

The court starts with how Judge Clevert calculated the 276-month sentence he imposed on October 5, 1999.

The indictment alleged that on May 6, 1999, the defendant possessed with intent to distribute in excess of five grams of cocaine base. Dkt. No. 107-1. At that time, 21 U.S.C. §841(b)(1)(B)(iii) provided that a defendant who committed an offense involving more than five grams of crack faced a mandatory minimum sentence of five years in custody and a maximum of forty years in custody.

The government indicated in its opposition to the defendant's motion to correct his sentence that the presentence investigation report reflects that the offense of conviction involved 46.5 grams of crack. Dkt. No. 113 at 1-2. It also indicates (as do other pleadings) that the defendant qualified as a career

5

offender under U.S.S.G. §4B1.1. Id. at 2. Under the 1998 sentencing guidelines in effect at the time of the defendant's October 1999 sentencing, a career offender convicted of an offense with a statutory maximum of forty years was assigned an offense level of 34 and a criminal history category of VI. Because he went to trial, the defendant would not have received an adjustment for acceptance of responsibility. The guideline range for offense level 34 in criminal history category VI was 262 to 327 months.

In 1999, the sentencing guidelines were mandatory. Judge Clevert had no choice but to sentence the defendant within that 262-to-327-month range, and that is what he did. He sentenced the defendant to serve 276 months—fourteen months above the low end of the range (21% of the differential between the low- and high-end sentences).

The judgment also stated that *after* the defendant finished serving that 276-month sentence, he would start serving the eighteen-month revocation sentence Judge Clevert had imposed in Case No. 94-cr-102. Dkt. No. 33 at 2. Effectively, Judge Clevert imposed a sentence of 294 months between the two cases—twenty-four years and six months.

The First Step Act

The First Step Act allows this court to resentence the defendant as if sections 2 and 3 of the Fair Sentencing Act of 2010 had been in effect when the defendant committed the cocaine base offense in May 1999. Section 2(a) of the Fair Sentencing Act changed 21 U.S.C. §841(b)(1)(B)(iii). Instead of five grams of cocaine base triggering the mandatory minimum of five years and the

6

maximum of forty, section 2(a) of the FSA raised the trigger amount to twenty-eight grams. Under section 2(a) the FSA, offenses involving less than twenty-eight grams of cocaine base carried no mandatory minimum sentence and a maximum of twenty years.

Calculating the Defendant's Sentence Under the FSA

If section 2(a) of the FSA had been in effect when the defendant committed his offense in May 1999, he would have faced no mandatory minimum and a maximum statutory penalty of twenty years. Under both the 1998 sentencing guidelines and the 2018 sentencing guidelines in effect today, a career offender facing a twenty-year maximum penalty is assigned an offense level of 32 in criminal history category VI. Under both sets of guidelines, level 32 in criminal history category VI results in a sentencing range of 210 to 262 months. The 276-month sentence Judge Clevert imposed exceeds the high end of that range by fourteen months.

Plenary Resentencing

This brings the court to the defendant's argument that if he qualifies for a sentence reduction under the First Step Act, the court has the discretion to reduce not just the portion of his sentence that resulted from his possession of cocaine base, but all aspects of his sentence. He has argued that the court ought to take the opportunity to impose an even lower sentence on the drug charge in this case, to offset the eighteen-month consecutive revocation sentence Judge Clevert imposed in Case No. 94-cr-102, so that he can be

released immediately or very shortly. The First Step Act does not authorize the court to do this.

Section 404(b) of the First Step Act says that a court that imposed a sentence "for a covered offense" "may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." The court reads these two provisions to state that it has the discretion to reduce the defendant's sentence on the *covered offense*—the drug charge in the 1999 case—to the sentence he would have received if section 2(a) of the FSA had been in effect when he committed that offense.

A defendant who files a First Step motion is asking the court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . ," under 18 U.S.C. §3582(c)(1)(B). See, *e.g.*, United States v. Delaney, Case No. 6:08-cr-00012, 2019 WL 861418 at *1 (W.D. Va., Feb. 22, 2019) ("Modifications of sentences under the First Step Act are governed by 18 U.S.C. § 3582(c)(1)(B)"); United States v. Fountain, Case No. 1:09-cr-00013-MR-WCM-9, 2019 WL 637715 at *2 (W.D.N.C., Feb. 14, 2019) (concluding that the defendant was eligible for a reduced sentence under the First Step Act and 18 U.S.C. §3582(c)(1)(B), "(allowing the court to modify a sentence 'to the extent otherwise expressly permitted by statute')"); United States v. Copple, Case No.

17-cr-40011-JPG-009, 2019WL486440 at *2 (S.D. Ill., Feb. 7, 2019) (rejecting the suggestion that the "proper vehicle" to implement §404 was a motion under §3582(c)(2), and expressing the belief that "the better vehicle to impose a reduced term of imprisonment is § 3582(c)(1)(B)) . . . ."); United States v. Kamber, Case No. 09-cr-40050-JPG, 2019 WL 399935 at *2 (S.D. Ill., Jan. 31, 2019) (same holding as Copple).

Several courts have considered whether §404(b) of the First Step Act "expressly permit[s]" plenary resentencing. On March 6, 2019, two district courts in different districts held that it does not. In United States v. Davis, Case No. 07-cr-2458(1), 2019 WL 1054554 at *2 (W.D.N.Y., Mar. 6, 2019), the defendant argued that the First Step Act "authorizes full resentencing." The Davis court found that the Act "contemplates a recalculation of a defendant's Guidelines numbers under the Fair Sentencing Act and a possible sentencing reduction consistent therewith, if warranted." Judge Skretny observed that "[n]owhere does the Act expressly permit the type of plenary resentencing or sentencing anew that [the defendant] advocates." Id. Davis also argued that Judge Skretny should impose a sentence of 151 months, "the lowest end of the new applicable Guidelines range," rather than a sentence of time served. Davis, 2019 WL 1054554 at *1, n. 2. The probation office had prepared a supplemental presentence report to assist the court; it showed that the defendant's new guideline range was 151 to 188 months with an eight-year term of supervised release, and that the defendant had served more than 136 months and accrued 600 days of good-time credit. Id. at *3. Judge Skretny

9

concluded that imposing a determinate sentence of 151 months "would result in an overserved sentence, which this Court will not permit for public safety and deterrence reasons." Id. He granted the First Step motion, but imposed a sentence of time served. Id. at (The defendant has appealed this decision to the Second Circuit.)

The same day, a court in the Southern District of Florida came to the same conclusion. In United States v. Potts, Case No. 02:90-cr-14010-ROSENBERG, 2019 WL 1059837 at *2 (S.D. Fla., Mar. 6, 2019), the defendant argued in his First Step motion that the sentencing court had violated Supreme Court precedent in calculating the amount of cocaine base attributable to him, and that "due to developments in the law since his sentencing, he no longer qualifie[d] as a career offender." Citing Eleventh Circuit precedent, the Potts court held that "[a] 'defendant is not entitled to a full resentencing during a § 3582(c) proceeding.'" Id. (quoting United States v. Cole, 417 F. App'x 922, 923 (11th Cir. 2011)). It held that §3582(c) does not give a court "jurisdiction to consider extraneous resentencing issues," id. (quoting United States v. Bravo, 203 F.3d 778, 781-82 (11th Cir. 2000)), and that "original sentencing determinations remain unchanged" in a §3582(c) resentencing, id. (citing Cole, 417 F. App'x at 923). The court found that the First Step Act did not "expressly" provide for plenary resentencing or reconsideration of prior sentencing decisions; "[t]he First Step Act simply permits a court to 'reimpose a reduced sentence' as if the Fair Sentencing Act's increased cocaine base

requirements 'were in effect at the time the covered offense was committed.'" Id. (quoting Pub. L. No. 115-391, 132 Stat. 5194).

The Potts court also rejected the argument that by using the word "impose," the First Step Act allows courts to conduct full resentencings. The defendant in this case argues that "[f]ederal sentencing statutes regularly use the verb 'impose' to mean 'sentence,'" and argued that the fact that the Act states that a court may "impose" a reduced sentence shows that Congress meant for courts to conduct plenary resentencings. Dkt. No. 51 at 2. The Potts court noted, however, that it had to read the Act's use of the word "impose" in context: "The First Step Act authorizes a court to 'impose a reduced sentence,' and otherwise refers to a proceeding to 'reduce' a sentence." Potts, 2019 WL 1049837 at *3. Read in that context, the Potts court concluded that the word "impose" did not invite a plenary resentencing.

A week later, another judge in the Western District of New York reached the same conclusion. In United States v. Sampson, 360 F. Supp. 3d 168, 170 (W.D.N.Y. 2019), the defendant argued that he was entitled to a plenary resentencing under 18 U.S.C. §3582(c)(1)(B) and that he was entitled to be present at that resentencing. He also asked for a "'new' sentence of 123 months," while the government and the probation office recommended that the court impose a sentence of time served. Id. The Sampson court "agreed with Judge Skretny [in Davis] that a full resentencing is neither required nor called for." Id. at 171. It granted the motion, and reduced the defendant's sentence to time served. Id.

11

The District of Nebraska followed suit on March 20. The court in <u>United States v. Russo</u> first noted that nothing in the First Step Act required a court to reduce a qualifying defendant's sentence. <u>United States v. Russo</u>, Case No. 8:03CR413, 2019 WL 1277507 at *1 (D. Neb., Mar. 20, 2019). With regard to the defendant's argument that the Act "anticipates a full re-sentencing with application of laws and Guidelines that have changed since a defendant's original sentencing," the <u>Russo</u> court found that if it were to engage in such an exercise, "it would work an injustice to offenders sentenced in the past who did not have a crack cocaine conviction qualifying for sentence reduction pursuant to the Fair Sentencing Act of 2010." <u>Id.</u> <u>See also</u>, <u>United States v. Haynes</u>, Case No. 8:08CR441, 2019 WL 1430125 at *2 (D. Neb., Mar. 29, 2019) (same holding, with some expanded reasoning).

This court agrees with those courts. The First Step Act does not "expressly permit" the court to conduct a plenary resentencing. It does not authorize the court to disturb Judge Clevert's conclusion that the defendant qualified as a career offender, or to modify the eighteen-month consecutive sentence Judge Clevert imposed in Case No. 94-cr-102. It authorizes the court to do one thing—recalculate the sentence Judge Clevert imposed in the 1999 case as if section 2(a) of the FSA had been in effect when the defendant committed that crime.

<u>Effect of a Sentence Reduction Under the First Step Act</u>

As it noted above, at the time it denied the motion to correct the reduced sentence, the court was under the impression that the defendant had been in

custody since May 6, 1999—as of the date he filed his First Step motion, a little over 237 months. One would think that if, on February 25, 2019, a court imposed a sentence of "time served" on someone who had served 237 months and nineteen days of a 276-month sentence as of that date, the Bureau of Prisons would have modified its records to show that that person had finished serving the sentence as of the date of the time-served judgment. In the defendant's case, one might think that the Bureau of Prisons would have shown the defendant's 99-cr-82 sentence as ending on the day the court entered the amended judgment (February 25, 2019), and would have shown his eighteen-month sentence for the 1994 revocation starting the next day. It does not appear that that is what the Bureau of Prisons has done.

The Bureau of Prisons document is difficult to decipher. It indicates that the defendant was sentenced on October 5, 1999 and committed to BOP custody on October 28, 1999. Dkt. No. 123-1 at 2. It says he had "jail credit" from May 6, 1999 through October 4, 1999 (152 days, or approximately five months). Id. at 3. One would think that when the court imposed a sentence in Case No. 99-cr-82 of "time served" on February 25, 2019, the Bureau of Prisons would have adjusted its records to show that the defendant had served the entire sentence for Case No. 99-cr-82 as of February 25, 2019 (a sentence of 237 months and 19 days, as the court said in its order denying the motion to reconsider—about the middle of the new guideline range), and to show that the defendant started his eighteen-month revocation sentence in Case No. 94-cr-102 on February 26, 2019. Looking at it another way, one would think that the

13

time-served sentence of 237 months and nineteen days, plus the eighteen-month sentence in Case No. 94-cr-102, would have resulted in a "new" total sentence of 255 months and nineteen days (barring any good-time credit earned after February 25, 2019).

But the document from the Bureau of Prisons says that the "new sentence imposed" is "268 months 29 days." Id. The court can't figure out where that number comes from; it appears to be thirteen months and ten days higher than it should be. While the court doesn't agree with the defendant that the "time served" sentence is incorrect, it does appear that the Bureau of Prisons has not effectuated the court's order of a time-served sentence. But the court does not know if its guidelines calculations are correct. It has no idea how the Bureau of Prisons came to the calculations reflected in Dkt. No. 123-1. And before it makes any changes to the amended sentence it imposed in February, the court is going to obtain input from probation on those two issues.

Conclusion

The court **GRANTS** the defendant's Motion for Reconsideration. Dkt. No. 123.

The court **DEFERS** ruling on whether to modify the February 25, 2019 amended judgment pending receipt of a supplemental presentence report from the probation office.

The court **ORDERS** that the probation office shall prepare a supplemental presentence report, calculating the guidelines for the offense of

conviction in Case No. 99-cr-82 as if section 2(a) of the FSA had been in effect when the defendant committed that offense, and shedding any light it can on why the Bureau of Prisons' new sentence calculation does not seem to implement the February 25, 2019 "time served" sentence.

Dated in Milwaukee, Wisconsin this 22nd day of April, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**